868 A.2d 252

**STATE of Maryland**

v.

**Wilbert Pelzie PRICE.**

**No. 107, Sept. Term, 2003.**

Court of Appeals of Maryland.

Feb. 14, 2005.

Mary Ann Ince, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), for petitioner.

Bradford C. Peabody, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), for respondent.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, GREENE and JOHN C. ELDRIDGE, (Retired, specially assigned), JJ.

BELL, C.J.

This Court has been asked to decide whether Maryland Code (2002) § 6–103 of the Criminal Procedure Article and Maryland Rule 4–271 were violated when, robbery and assault charges, for which Wilbert Pelzie Price, the respondent, was under indictment, having been nolle prossed,[1] the State re-indicted the respondent for the same charges, but did not dispose of those charges within 180 days of the initial indictment. The statute[2] and the Rule,[3] together, require that a

---

1.  Maryland Rule 4–347, Nolle prosequi provides:
    "(a) *Disposition by nolle prosequi.* The State's Attorney may terminate a prosecution on a charge and dismiss the charge by entering a nolle prosequi on the record in open court. The defendant need not be present in court when the nolle prosequi is entered, but in that event the clerk shall send notice to the defendant, if the defendant's whereabouts are known, and to the defendant's attorney of record.
    "(b) *Effect of Nolle Prosequi.* When a nolle prosequi has been entered on a charge, any conditions of pretrial release on that charge are terminated, and any bail bond posted for the defendant on that charge shall be released. The clerk shall take the action necessary to recall or revoke any outstanding warrant or detainer that could lead to the arrest or detention of the defendant because of that charge."

2.  Maryland Code (2002) § 6–103 of the Criminal Procedure Article, titled "Trial Date," provides:
    "(a) *Setting the date.*—The date for trial of a criminal matter in a circuit court:
    "(1) Shall be set within 30 days after the earlier of:
    "(i) The appearance of counsel; or
    "(ii) The first appearance of the defendant before the circuit court, as provided in the Maryland Rules; and
    "(2) May not be later than 180 days after the earlier of those events.
    "(b) *Changing the date.*—on motion of a party or on the court's initiative and for good cause shown, a county administrative judge or a designee of that judge may grant a change of the circuit court trial date.
    "(c) *Court rules.*—The Court of Appeals may adopt additional rules of practice and procedure for the implementation of this section in circuit courts."
    The predecessor to § 6–103, Maryland Code (1957, 1996 Replacement Volume) Article 27, § 591, was identical.

3.  Maryland Rules, § 4–271(a) provides:
    "(a) *Trial Date in Circuit Court.*
    "(1) The date for trial in the circuit court shall be set within 30 days after the earlier of the appearance of counsel or the first appearance

criminal defendant be brought to trial within 180 days after the earlier of either the appearance of defendant's counsel or the first appearance of the defendant. Concluding that the nolle pros of the initial indictment "was intended to circumvent that portion of the rule, which leaves to the administrative judge to decide whether a case, once set within 180 days, should be continued for good cause shown," and noting that, as to that indictment, more than 180 days had then elapsed since the prescribed appearances, the trial court ruled that § 6–103 and Rule 4–271 had been violated and, therefore, dismissed the re-indicted charges. The Court of Special Appeals, agreeing with the trial court's analysis, affirmed. *State v. Price,* 152 Md.App. 640, 644–45, 833 A.2d 614, 617 (2003). We granted the State's petition for writ of certiorari. *State v. Price,* 379 Md. 98, 839 A.2d 741 (2004). We agree with the Circuit Court and the intermediate appellate court.

## I.

On May 9, 2002, the respondent was indicted, charged with robbery, first degree assault, and second degree assault. He appeared without counsel in the Circuit Court for Montgomery County on May 17, 2002 and his counsel entered his

---

of the defendant before the circuit court pursuant to Rule 4–213, and shall be no later than 180 days after the earlier of those events. When a case has been transferred from the District Court because of a demand for jury trial, and an appearance of counsel entered in the District Court was automatically entered in this circuit court pursuant to rule 4–214(a), the date of the appearance of counsel for purposes of this rule is the date the case was docketed in the circuit court. On motion of a party, or allow the court's initiative, and for good cause shown, the county administrative judge or that judge's designee may grant a change of a Circuit Court trial date. If a circuit court trial date changed, any subsequent changes of the trial date may be made only by the county administrative judge or that judge' designee for good cause shown.

"(2) Upon a finding by the Chief Judge of the Court of Appeals that the number of demand for jury trial filed in the District Court for a county is having a critical impact on the efficient operation of the circuit court for the county, the Chief Judge, by Administrative Order may exempt from this section cases transferred to that circuit court from the District Court because of a demand for jury trial."

appearance five days later, on May 22, 2002. The trial date was set for July 23, 2002. At a status conference, conducted on June 21, 2002, noting the assigned prosecutor's unavailability on the trial date due to a conflict with the trial of another case, the State requested a continuance of the trial date. Pointing to his incarceration, the respondent objected. Nevertheless, after confirming that both counsel were available on that date, the trial court continued the case to August 12, 2002.

Prior to the new trial date,[4] by motion filed August 5, 2002, the State sought to continue the trial date once again. When it did so, the State was subject to a court order, entered in response to the respondent's motion to compel discovery, pursuant to which the State was required, within ten (10) days, to file a written answer to the respondent's then pending discovery motion and provide the respondent with certain enumerated material. The order also stated: "in the event the State fails to abide by this Order, the State shall be prohibited from producing any witness, or evidence at trial or hearing which relates in any way to the State's non-disclosure."

At a hearing on the motion to continue, held August 12, 2002, the State argued that the continuance was necessary because it had not received a deoxyribonucleic acid (DNA) analysis of evidence submitted to the crime lab on May 10, 2002. In support of that argument, the State informed the court that it is the crime lab's practice not to begin DNA analyses until it receives a subpoena with a trial date and that, although neither it nor the police officer had advised the crime lab of the trial date or knew that they should, the analysis would not have been ready in time for the August 12th trial date in any event, explaining:

---

4. When continuing the trial date to August 12, the court scheduled a motions hearing for August 1, 2002. It was at this hearing, or shortly thereafter, that the State learned from one of its detectives that the DNA analysis it had requested of the Montgomery County Crime Lab had not been done.

"We had a status date on June 21st where this trial date was scheduled. Even if I knew on June 21st to notify them of that trial date, we still couldn't have had the trial date today because it would take them four to six weeks to do the testing and we have to give 45 days notice, so that would have been a middle of September trial date anyway." [5]

Noting that the "*[Hicks]*[6] date in this case doesn't even run until the end of November. This case was just [indicted] the end of May, it's a very serious matter," it pointed out that "under the 180 days he has until the middle to end of November to have [a speedy trial], and we have a lot of time between the 2 nd week in August and the end of November to set that."

Characterizing the State's reason for requesting a continuance as "not even a poor excuse, it's a pitiful excuse," and refusing to keep the respondent "sitting in jail," the administrative judge denied the motion for continuance. Believing that the DNA evidence was needed as part of its case, the State declined to go to trial without it. Consequently, it nolle prossed the charges against the respondent, stating, however, "we'll get a new charging document today to charge."

The respondent was re-indicted for the identical charges. That did not occur, however, until September 19, 2002, some five weeks after the initial indictment was nolle prossed. The new indictment was met with a motion to dismiss for violation of the *Hicks* Rule.[7] The hearing on that motion was held on November 27, 2002.

---

**5.** As the respondent reminds us, the August 12th trial date was a continued one. The original trial date was July 23rd and it was set at the respondent's initial appearance in the Circuit Court. Thus, the respondent submits, assuming the crime lab also had been notified of the trial date and a six weeks turn around time, the DNA results would have been available on June 28th. Factoring in a forty-five day notice requirement results, he further submits, in their being available for use on the second trial date, August 12th.

**6.** *State v. Hicks*, 285 Md. 310, 403 A.2d 356, *on motion for reconsideration*, 285 Md. 334, 403 A.2d 368 (1979).

**7.** The respondent filed, initially, on September 23, 2002, a motion to dismiss for lack of speedy trial. He filed, thereafter, on November 20,

In support of its motion, the respondent relied on his consistent demand, from the first request for continuance by the State, for strict compliance with the *Hicks* Rule and the order to compel discovery. Specifically, he pointed out that his first appearance under the initial indictment occurred on May 17, 2002 and, consequently, at the time of the hearing, more than 180 days had expired. With respect to the order to compel discovery, the respondent noted that the State had not met the ten day deadline to provide discovery before its nolle pros of the indictment terminated the case. That order prohibited, moreover, he adds, the State "from producing any witness or evidence at trial or hearing which relates in any way to the nondisclosure." The trial date being beyond the *Hicks* date, the respondent concluded that the State entered "a nolle pros to get around Judge Debelius' order [to compel discovery]" and "also to get around the *Hicks'* date."

The State disputed that analysis, emphasizing instead when in the 180 day period the nolle pros was entered, on the eighty-third day, with "ninety-seven days remaining to reset the case." It also submitted:

> "The sole purpose of requesting the continuance was to get the [DNA] testing done, and it couldn't have been more clear as to why we were asking for the continuance. And whether or not the judge grants that or not that's not really the issue, the issue was the nolle pros to get around the 180, and the answer i[s] clearly no, because there was over three months to reschedule the trial date."

Accepting the State's argument that it "acted not to circumvent the prohibition that a case be tried within 180 days, because there were a number of days left," the court nevertheless granted the respondent's motion to dismiss the indictment. It did so because it concluded that, in addition to the 180 day requirement, Rule 4–271, consistent with the statute it

2002, "Defendant's Second Motion to Dismiss—Violation of the *Hicks'* Rule."

implements, contains a second component, prohibition of the continuance of a trial date except for good cause found by the administrative judge or that judge's designee. Thus, pointing out that "the supervision of the dockets is given to the administrative judge," who, by determining, in that capacity, or by designee, whether good cause exists to continue the trial date, "decide[s] whether cases can and can't be tried within the 180 days," and noting that the State does not have the right to appeal that good cause determination, the court was satisfied that "it was the decision of the administrative judge of that county that the State had not established a good cause" that was being sought to be circumvented.[8]

Emphasizing that ninety-seven of the 180 day *Hicks* period remained when the State nolle prossed the charges against the respondent due to the unavailability of DNA test results, the Circuit Court expressly found that, "in this case what really is occurring is the State acted not to circumvent the prohibition that a case be tried within 180 days ... that wasn't what the State was intending," that the results of DNA testing were essential to its case and to complying with both the respondent's discovery request and the court's order with respect thereto, and that the nolle pros is a legitimate prosecutorial option available to the State, the State submits that the Circuit Court and the Court of Special Appeals erred in dismissing the re-indictment of the respondent. It argues that dismissal is, in fact, inconsistent with the settled pronouncements of this Court, pronouncements which, it says, have stated clearly that where a case has been nolle prossed for unavailability of DNA evidence, the 180 day period runs from the date of the appearances of counsel and defendant pursuant to the subsequent indictment, rather than the one

---

8. In reaching its decision, the court considered *State v. Brown,* 341 Md. 609, 672 A.2d 602 (1996), proffered by the State in support of its position, and *Ross v. State,* 117 Md.App. 357, 700 A.2d 282 (1997), proffered by the respondent for his position, but concluded that "neither one of them, really, ... is directly applicable to the facts of this case." What the court found particularly relevant from the cases, *Ross* more so than *Brown,* is that "they talk about ... the whole reason for this rule and necessity to enforce this rule."

that was nolle prossed. It is the State's position, in other words, that the "statute and rule [apply] only when the circumstances are such that, in the absence of the nol pros, dismissal with prejudice was a certainty because the State was absolutely incapable of trying the case within the 180 day period." The State relies on *State v. Brown*, 341 Md. 609, 672 A.2d 602 (1996); *State v. Glenn*, 299 Md. 464, 474 A.2d 509 (1984); *Curley v. State*, 299 Md. 449, 474 A.2d 502 (1984).

■ The State is correct, "when a circuit court criminal case is nol prossed, and the state later has the same charges refiled, the 180–day period for trial prescribed by § [6–103] and Rule [4–271] ordinarily begins to run with the arraignment or first appearance of defense counsel under the second prosecution." *Curley*, 299 Md. at 462, 474 A.2d at 508. There was an exception to the general rule recognized in *Curley*, however, "where the prosecution's purpose in filing the nol pros, or the necessary effect of the nol pros, was to circumvent the requirements of § [6–103] and Rule [4–271]." *Glenn*, 299 Md. at 467, 474 A.2d at 511. *Curley* and *Glenn* both involve and, although they reach different results, elucidate the "necessary effect" component of the exception.

In *Curley*, the State nolle prossed the charges against the defendant on "the final day for trial," 299 Md. at 453, 474 A.2d at 504, and when there had not been a trial date set. Notwithstanding the State's representation to the defendant as to the reason for the nolle pros, that it was entered, "based on the combined factors of the apparent inadmissibility of the blood alcohol content test as performed in the case and upon the request made of the State by the family of the victim," *id.* at 453, 474 A.2d at 504, and the trial court's apparent acceptance of that explanation, *id.* at 453, 474 A.2d at 504, this Court reversed the trial court's denial of the defendant's motion to dismiss the indictment, containing the identical charges, brought three months subsequently. While recognizing the appropriateness of the exception to the general rule applied by the trial court, the Court declared that exception to be "too limited," explaining:

"Where the [S]tate's action *necessarily circumvents* the statute and rule prescribing a deadline for trial, this should be sufficient to continue the time period running with the initial prosecution."

*Id.* at 461, 474 A.2d at 508 (emphasis added). The Court concluded:

"When the nol pros was entered on March 23, 1981, which was the final day for trial, it was too late for compliance with § 591 and Rule 746. At the time a trial date had not even been assigned. The case could not have been tried on March 23rd, as the defendant, his counsel, and witnesses were not present. There was no reason for them to have been present, as March 23rd was not the assigned trial date. As of the close of business on March 23rd, the case would have had to have been dismissed for violation of § 591 and Rule 746. In reality, the prosecution had already lost the case under § 591 and Rule 746 when the nol pros was filed. Regardless of the prosecuting attorney's motives, the necessary effect of the nol pros was an attempt to evade the dismissal resulting from the failure to try the case within 180 days."

*Id.* at 462–63, 474 A.2d at 508–509.

By contrast, in *State v. Glenn, supra,* it was clear to the Court that the nolle pros in that case did not have the "necessary effect" of circumventing the 180 day Rule. In that case, the Court first considered whether the record evidenced any intention on the part of the State to circumvent the 180 day Rule and rejected that proposition. It observed, in that regard, that the State nolle prossed the charges against Glenn, as "[t]he record clearly establish[ed], with no basis for a contrary inference ... because of a legitimate belief that the charging documents were defective and because the defendant's attorney would not agree to amendment of the charging document." 299 Md. at 467, 474 A.2d at 511. Addressing the effect of that action, the Court opined:

"Unlike the situation in *Curley,* the necessary effect of the nol pros in these cases was not to circumvent § 591 and

Rule 746. November 17, 1981, which was the assigned trial date and the date of the nol pros, was only 123 days after the arraignment and first appearance of counsel. If the cases had not been nol prossed, trial could have proceeded on November 17th. If the cases had not been nol prossed, and if for some reason trial had not proceeded when the cases were called on November 17th, there remained fifty-seven days before the expiration of the 180–day deadline. In *Curley*, if the cases had not been nol prossed on the 180th day, it necessarily would have been dismissed for a violation of § 591 and Rule 746. This is not the situation in the present cases. The effect of the nol pros in the present cases was not necessarily to evade the requirements or sanction of § 591 and Rule 746."

*Id.* at 467, 474 A.2d at 511.

*State v. Brown, supra,* is to similar effect. The charges in that case were nolle prossed forty-three days before the assigned trial date because, as in the case *sub judice,* the requested DNA tests had not been completed, and charges were re-instituted via indictment filed three months later. *Brown,* 341 Md. at 612, 672 A.2d at 604. The State did not seek a postponement of the trial before entering the nolle pros and the defendant, conceding the necessity of the test results and that a postponement most probably would have been granted, had one been requested, argued only the nolle pros's effect on the requirements of the statute and the rule, and the Court confined its decision to that issue.[9] Denying the defen-

---

9. To be sure, the defendant suggested that the State should have sought a postponement rather than nolle pros the charges and, in fact, faulted the State for not having done so. The Court rejected the finding of fault concluding:

"[T]he decision whether to enter a nol pros or to seek a postponement because of the delay in the DNA testing is for the prosecuting attorney and not for an appellate court. *Hook v. State,* 315 Md. 25, 35, 553 A.2d 233, 238 (1989) (' "The entry of a nolle prosequi is generally within the sole discretion of the prosecuting attorney, free from judicial control," ' quoting *Ward v. State,* 290 Md. 76, 83, 427 A.2d 1008, 1012 (1981)). The State's Attorney's office may have decided that if the DNA test results were favorable to the defendant,

dant's motion to dismiss for violation of § 591 and Rule 4–271, after reviewing *Curley* and *Glenn,* the Court concluded:

> "a nol pros will have the 'necessary effect' of an attempt to evade the requirements of § 591 and Rule 4–271 *only* when the alternative to the nol pros would have been a dismissal with prejudice for noncompliance with § 591 and Rule 4–271."

341 Md. at 619, 672 A.2d at 607, citing *State v. Phillips,* 299 Md. 468, 474 A.2d 512 (1984); *State v. Henson,* 335 Md. 326, 335–336, 643 A.2d 432, 437 (1994). Applying that rule, it explained:

> "It is obvious that the nol pros in the case at bar did not have the necessary effect of an attempt to circumvent the requirements of § 591 and Rule 4–271. If the case had not been nol prossed on October 5, 1993, there would have been 43 days before the expiration of the 180–day period. In this respect, the case is very much like the *Glenn* case. During this 43–day period, the State's Attorney's office may have been able to expedite the DNA testing and obtain the results so that trial of the case could have begun before the deadline. Alternatively, the State's Attorney's office may have obtained from the administrative judge, in accordance with § 591 and Rule 4–271, a good cause postponement of the trial to a date beyond the 180–day period. There was clearly a basis for such postponement."

*Id.* at 620, 672 A.2d at 607–608.

The "necessary effect" of the nolle pros is only one of the inquiries that informs the decision whether, in a specific situation, the general rule that the 180 day period runs from the date of the arraignment under the new indictment, should be applied, rather than the exception recognized in our cases. That exception, as articulated in *Curley* and reiterated in later

---

the charges would not be refiled, and thus the nol pros on October 5, 1993, would have ended the matter. Whatever the reason, however, the decision to enter a nol pros or to seek a postponement was within the prosecuting attorney's discretion."
*Id.* at 620–621, 672 A.2d at 608.

cases, *see Glenn,* 299 Md. at 466, 474 A.2d at 511; *Brown,* 341 Md. at 614, 672 A.2d at 604–605; *Henson,* 335 Md. at 335 n. 4, 643 A.2d at 436 n. 4, has two components: the nolle pros' purpose and the nolle pros' effect. *See Baker v. State,* 130 Md.App. 281, 289, 745 A.2d 1142, 1146 (2000), in which the intermediate appellate court, stating the analytical framework for re-indicted cases, recognized, as well as articulated, that the *Curley* exception was "a two pronged" one. This Court has not had the occasion to address, directly or extensively, the former component. The Court of Special Appeals has, however. *See State v. Akopian,* 155 Md.App. 123, 841 A.2d 893 (2004); *Ross v. State,* 117 Md.App. 357, 700 A.2d 282 (1997).

In *Akopian,* faced with the prospect of proceeding to trial without its witness, a police officer on assignment in connection with the Washington/Virginia snipers, when the administrative judge denied its request for a continuance and the defendant waived his jury trial prayer and discovery motion,[10] the State nolle prossed the charges against the defendant. It re-indicted the defendant within two days and, thereafter, consistently sought to have the case set in for trial within the 180 day period measured from initial appearance/arraignment in the first indictment.[11] Despite the defendant's persistent appearance without counsel and the administrative judge's reluctance to set a trial date when the defendant was unrepre-

---

**10.** As to the latter, the Court of Special Appeals observed:

"The State was willing to commence the trial on October 22, by litigating pending motions and, thereafter, participating in jury selection. Appellee's unexpected waiver of his right to trial by jury, and election of a bench trial, effectively pulled the rug out from under the State. Faced with the unavailability of necessary police witnesses, and rather than go forward and not be able to prove its case, the State chose to *nolle prosequi* and re-indict."

*State v. Akopian,* 155 Md.App. 123, 143, 841 A.2d 893, 904 (2004).

**11.** The Court of Special Appeals enumerated, in detail, the numerous attempts the State made to expedite the trial date to avoid a *Hicks* problem, and, by contrast, the factual basis for its conclusion that "the State was vigorous in its effort to advance the trial date to fit within the original 180 day calendar."

sented,[12] the State succeeded in having the trial date set within 180 days of the initial appearance, only to have the case not go forward on that date due to inclement weather. Although impressed by the State's efforts to meet the *Hicks* deadline and sympathetic to the State's position, the trial court granted the defendant's motion to dismiss. It reasoned:

"But the position I have taken with respect to these motions and this rule is that there are two parts to that rule ... discussed in *Hicks*.

"One is that trial has ... to be tried ... within 180 days. The other part to the rule ... is that it may not be continued unless for good cause shown by the administrative judge. And the cases that have dealt with this issue on appeal have discussed the importance of allowing the administrative judge to manage this docket so that all cases can be handled in an efficient manner.

"So ... it is not just the 180–day clause within the rule, but ... that the case cannot be continued unless for good cause shown and found by the administrative judge. In this case, clearly the State entered the nol-pros to avoid the order of the administrative judge which is that the case not be continued, no good cause having been shown. *I will say that the State, through the extraordinary efforts of [the State's Attorney], has managed in my view to satisfy the 180–day prong of that rule*[13] by managing to get the case set back in on the re-indictment by December 11th, which makes this case different from any case that is cited on appeal.

---

**12.** As reported by the intermediate appellate, "appellee continued to appear without counsel and continually refused the services of the public defender, despite the efforts of the administrative judge to counsel him on the importance of being represented. Having exhausted its efforts to have appellee obtain counsel, the court finally set the case for trial."

**13.** By this statement, we believe the court was holding that the "necessary effect" of the nolle pros was not to circumvent the statute and the rule.

"That notwithstanding, I think when you read those cases, they stand for the proposition that ... notwithstanding that you were able to get it set back in, that still the net effect of this was that you overruled the determination of the administrative judge that there was no good cause for continuing the prosecution of this matter."

*Akopian,* 155 Md.App. at 137, 841 A.2d at 901.

The Court of Special Appeals reversed. Having concluded that "the State's action, in and of itself, did not have the necessary effect of circumventing the 180–day rule," there being more than fifty days remaining in the original *Hicks* period when the nolle pros was entered, the intermediate appellate court turned to the purpose for entering the nolle pros. As to that prong, it discerned no facts from the record indicating "that the State's use of a *nolle prosequi* had either the necessary effect or the purpose of circumventing the 180– day rule" and it so held. To the intermediate appellate court:

"It [was] abundantly clear from the record that the State made extraordinary effort to obtain a trial date well within the outside limit of the original 180–day calendar. In every instance the State's effort was thwarted by appellee's appearance without counsel and, what we conclude to be, his refusal to be represented. It is true that the savvy defendant can manipulate the system to obtain delays, and the facts before us lead to the inescapable conclusion that appellee's goal was to delay trial to the point of a *Hicks* violation, despite the State's best efforts to avoid that result. The State should not suffer the detriment of his manipulation."

*Akopian,* 155 Md.App. at 143, 841 A.2d at 904–905 (footnote omitted).

One of the cases to which the *Akopian* court referred, and whose holding it analyzed, was *Ross, supra.* In that case, on the scheduled trial date, the State nolle prossed drug charges against the defendant immediately after its request for continuance, made because the drugs had not been analyzed, had been denied by the county administrative judge. In denying

the motion, that judge expressly refused to find good cause to continue the case and commented, "I don't think this case can be put back in. Our docket is too crowded." 117 Md.App. at 361, 700 A.2d at 284. The defendant was re-indicted eight days later and subsequently tried within the 180 day period applicable to that indictment, but more than the 180 days applicable to the nolle prossed indictment. *Id.*

Reversing the denial of the defendant's motion to dismiss for violation of the *Hicks* Rule and statute, the Court of Special Appeals held "that the State entered the nol pros to circumvent the 180–day limit." *Id.* at 370, 700 A.2d at 289. In support of that holding, the court emphasized the requirement of the statute and the rule that a defendant be brought to trial not later than 180 days of arraignment or first of appearance of counsel, that those requirements are mandatory, dismissal being the sanction for violation, and the role of the county administrative judge in overseeing compliance with those requirements.[14] *Id.* at 363–64, 700 A.2d at 285–86. As to the latter, more specifically, the court found significant that

---

14. We described that role, and its importance, as follows:

"The major safeguard contemplated by the statute and rule, for assuring that criminal trials are not needlessly postponed beyond the 180–day period, is the requirement that the administrative judge or his designee, rather than any judge, order the postponement. This is a logical safeguard, as it is the administrative judge who has an overall view of the court's business, who is responsible 'for the administration of the court,' who assigns trial judges, who 'supervise[s] the assignment of actions for trial,' who supervises the court personnel involved in the assignment of cases, and who receives reports from such personnel.

"Consequently, the administrative judge is ordinarily in a much better position than another judge of the trial court, or an appellate court, to make the judgment as to whether good cause for the postponement of a criminal case exists. Moreover, with regard to the extent of a postponement, even though the administrative judge may not personally select or approve the new trial date in a postponed case, such selection is made by personnel operating under his supervision and reporting to him. When he postpones a case, he is generally aware of the state of the docket in the future, the number of cases set for trial, and the normal time it will likely take before the case can be tried."

*State v. Frazier,* 298 Md. 422, 453–54, 470 A.2d 1269, 1285–1286 (1984).

the county administrative judge's discretion to determine whether good cause exists to extend the trial date "carries a heavy presumption of validity" and is "rarely subject to reversal upon review." *Id.* at 364–65, 700 A.2d at 286, quoting *Dalton v. State,* 87 Md.App. 673, 682, 591 A.2d 531, *cert. denied,* 325 Md. 16, 599 A.2d 89 (1991) and *State v. Frazier,* 298 Md. 422, 451, 470 A.2d 1269, 1284 (1984) (footnote omitted).

The Court of Special Appeals rejected the State's argument, which, relying on *Brown,* 341 Md. 609, 672 A.2d 602, and *Glenn,* 299 Md. 464, 474 A.2d 509, stressed that there were eighty-eight days left to run in the 180 day time period when the nolle pros was entered, concluding that the nolle pros did not have the "necessary effect" of circumventing the 180 day period:

"In *Brown,* however, there was no ruling from the administrative judge. Moreover, both parties had agreed that, if requested, a postponement for good cause would have been granted, and that there was a possibility that the case could have been brought to trial within the remaining forty-three days of the 180–day time period. We also note that there was no decision from the administrative judge in *Curley* and *Glenn.* In the present case, however, a postponement was requested and denied and, as found by the administrative judge, the case could not be set in before the tolling of the 180–day limit. We again stress that in light of the administrative judge's supervision of the docket, we are unable to ignore his statement that the case could not be heard before expiration of the 180–day time period. In addition, immediately following the judge's ruling, the State entered a nol pros in the case. We can discern no clearer attempt to circumvent the time period dictated by Art. 27, § 591 and Rule 4–271."

*Ross,* 117 Md.App. at 370, 700 A.2d at 289.

We agree with the court's result and its analysis. Just as the test for determining the applicable 180 day period when there has been a nolle pros of one indictment and a re-

indictment containing the same charges is two pronged, the statute and the rule, as the Court of Special Appeals and the Circuit Court recognized, have two aspects. Section 6–103 and Rule 4–271 "set forth [both] a definite time requirement for the trial of criminal cases and an explicit procedure for postponing a case beyond the 180–day limit." *Goldring v. State,* 358 Md. 490, 493, 750 A.2d 1, 2 (2000), quoting *Dorsey v. State,* 349 Md. 688, 701, 709 A.2d 1244, 1249 (1998) (some citations omitted). They "codify and implement the chief legislative objective that 'there should be a prompt disposition of criminal charges in the circuit courts.'" *Dorsey,* 349 Md. 688, 700, 709 A.2d 1244, 1249 (1998), quoting *State v. Hicks,* 285 Md. at 334, 403 A.2d at 369. Their intended objectives, implemented via the mechanism established by the statute and the rule, are to afford reasonably prompt trials, and eliminate excessive scheduling delays and unjustifiable postponements. *Hicks,* 285 Md. at 316, 403 A.2d at 359; *Dorsey,* 349 Md. at 701, 709 A.2d at 1250; *Farinholt v. State,* 299 Md. 32, 41, 472 A.2d 452, 456 (1984). Thus, "the mechanism of the *Hicks* Rule serves as a means of protecting society's interest in the efficient administration of justice. The actual or apparent benefits of § [6–103] and Rule 4–271 confer upon criminal defendants are purely incidental. *See Calhoun v. State,* 299 Md. 1, 11–12, 472 A.2d 436 (1984); *Curley v. State,* 299 Md. 449, 460, 474 A.2d 502 (1984); *Frazier,* 298 Md. at 456, 470 A.2d at 1286–87; *Marks v. State,* 84 Md.App. 269, 277, 578 A.2d 828, 832 (1990)." *Dorsey,* 349 Md. at 701, 709 A.2d at 1250.

■ In the case *sub judice,* the State sought and was refused a continuance, the administrative judge expressly finding no good cause for one. The effect of that ruling was to mandate that trial proceed, as scheduled. The consequence of the State not going forward or not producing evidence was dismissal of the case or an acquittal. When the State nolle prossed the case, it was, as the State concedes, to avoid those results. Thus, the State is correct, the nolle pros did not have the "necessary effect" of circumventing the 180 day requirement of the statute and the rule; rather, it was for the

purpose of circumventing, and, indeed, that intention was achieved, the requirement of the statute and the rule that trials proceed except when there has been a finding of good cause by the administrative judge.[15] Accordingly, we agree with the Court of Special Appeals that "the purpose for entering the nol pros in the case under consideration was to circumvent the authority and decision of the administrative judge." *State v. Price,* 152 Md.App. 640, 654, 833 A.2d 614, 623 (2003).

This case is stronger than *Ross.* In addition to the administrative judge finding no good cause for continuance and thus requiring the State to proceed to trial, the State was under, and in violation of, a discovery order requiring it to respond and imposing sanctions for non-compliance. The nolle pros also avoided the effect of that order and, so, its "necessary effect" was to circumvent that order.

JUDGMENT AFFIRMED, WITH COSTS.

---

15. The Court of Special Appeals, in a footnote, opined, without citation of authority, that:

"The State is not precluded from prosecuting appellant after reindicting him, in the case at hand, simply because it attempted to circumvent the ruling of the trial judge that good cause did not exist to grant a continuance. Had the State exercised due diligence to reschedule the trial date within the ninety-seven days remaining in the original 180-day period or had appellant prevented the case from going to trial before the expiration of that deadline, the 'necessary effect of the nol pros' would not have been to circumvent the requirements of § 591 and Maryland Rule 4-271."

*State v.Price,* 152 Md.App. 640, 655 n. 3, 833 A.2d 614, 623 n. 3 (2003). *See State v. Akopian,* 155 Md.App. 123, 841 A.2d 893 (2004).

It is not necessary that we address this issue and we do not, except to note what we said in *Curley v. State,* 299 Md. 449, 462, 474 A.2d 502, 508 (1984), offered after observing that "no case has been brought to our attention in which a court has clung to the view that the running of the speedy trial period begins with the second indictment when confronted with facts indicating that the necessary effect of the earlier nol pros was to defeat the time limitation imposed by the statute or rule," "[a]doption of such a view might open the door to widespread evasion of § 591 and Rule 746."