833 A.2d 614

**STATE of Maryland**

v.

**Wilbert Pelzie PRICE.**

**No. 2487, Sept. Term, 2002.**

Court of Special Appeals of Maryland.

Oct. 10, 2003.

Mary Anne Ince, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), for appellant.

Bradford C. Peabody, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), for appellee.

Argued before MURPHY, C.J., DAVIS, WILLIAM W. WENNER (retired, specially assigned). JJ.

DAVIS, J.

Appellee Wilbert Pelzie Price was charged with robbery, first degree assault, and second degree assault by an indictment filed on May 9, 2002 in the Circuit Court for Montgomery County. On May 17, 2002, he appeared without counsel; however, trial counsel entered his appearance on May 22, 2002.

On June 21, 2002, the State requested that, due to the unavailability of the assigned prosecutor, the case be rescheduled from the scheduled trial date, July 23, 2002. Mr. Steven D. Kupferberg, who had entered his appearance for appellee, objected to any postponement of the original trial date at the status conference on June 21, 2002. Neither Mr. David Boynton, the assigned prosecutor, nor counsel for appellee was present at the status conference on June 21, 2002. After counsel standing in for the State and appellee were able to consult with trial counsel, the case was rescheduled for a

motions hearing on August 1 and a two-day trial scheduled to commence on August 12, 2002. Appellee objected to the dates assigned. Pursuant to appellee's motion to compel discovery filed on June 20, 2002, Judge John W. Debelius, on July 30, 2002, ordered the State to file a written answer to appellee's motion for discovery and to provide materials to appellee's counsel within ten days.

On August 12, 2002, at a status conference before Judge Paul Weinstein, the prosecutor requested a continuance because of the unavailability of deoxyribonucleic acid (DNA) test results. Blood, found on appellee's right hand when he was arrested shortly after the robbery, according to the prosecutor, had been retained by the police as evidence and submitted to the crime laboratory on May 10, 2002 for comparison with the victim's blood. The prosecutor further advised that, on August 3, 2002, the detective investigating the case had indicated to him that the DNA analysis had not been completed; the State filed a motion to continue the case to obtain the DNA evidence which was characterized as "a very important piece of our case." The prosecutor also represented that the State would be seeking a mandatory sentence because of appellee's five prior convictions. When asked by the court whether the State was otherwise ready to go to trial, the prosecutor responded that, "without the DNA, I don't think that we are going to go to trial."

The reason offered as to why the DNA had not been received, according to the prosecutor, was that the evidence was submitted for analysis to the Montgomery County Crime Laboratory on May 10, 2002, but the results were not completed. The lower court's admonition that it would not continue the case without a reason was followed by a hiatus in the proceedings. Upon resumption of the hearing, the prosecutor informed the court that the Montgomery County Crime Laboratory procedure, upon receipt of materials from which DNA analysis is requested, was not to "begin taking action on it until they get a subpoena with a trial date on it." Upon notification of a trial date, the laboratory would begin the testing "so that they can complete their testing [thirty] days

prior to [the] trial date, so that the State can comply with [its] [thirty]-day notification." The Assistant State's Attorney explained that the analysis procedure was set up "because they only have two people that do DNA testing." According to the Assistant State's Attorney, he did not notify the laboratory of the trial date because "there was no DNA report in the discovery that I got," that the laboratory had "just started up in spring doing DNA," and that neither he nor the detectives had been notified that they were supposed to notify the laboratory. Even if the State had known to notify the laboratory of the date of the June 21 status conference, according to the prosecutor, "we still couldn't have had the trial date today because it would take them four to six weeks to do the testing and we have to give [forty-five] days['] notice, so that would have been a middle of September trial date anyway." The 180 day period [1] "doesn't even run until the end of November," and the case was a "very serious matter."

Noting that appellee was incarcerated, Judge Weinstein denied the request for continuance and advised that there was "a judge available to try this case today." The Assistant State's Attorney thereupon addressed the court: "The State will enter a *nolle pros* to the charge at this time and we'll get a new charging document today to charge."

On September 19, 2002, appellee was again charged with robbery, first degree and second degree assault, which charges have been the subject matter of the indictment previously filed against him. Appellee, on September 23, 2002, filed a motion to dismiss for lack of a speedy trial and a hearing was conducted before The Honorable Michael D. Mason on November 27, 2002.

Counsel for appellee argued that the State had *nol prossed* the initial charge in bad faith to get around the order of Judge Debelius regarding discovery and "to get around the *Hicks'* date." The Assistant State's Attorney denied that there was

---

1. Referring to the *Hicks'* requirement announced in *State v. Hicks*, 285 Md. 310, 403 A.2d 356, *on motion for reconsideration*, 285 Md. 334 (1979).

any intent to circumvent the 180–day requirement, noting that the trial date was set on day eighty-three, and "we had ninety-seven days remaining to reset the case." In a further attempt to justify the request for continuance, the Assistant State's Attorney explained:

The sole purpose of requesting the continuance was to get the testing done, and it couldn't have been more clear as to why we were asking for the continuance. And whether or not the judge grants that or not that's not really the issue, the issue was the *nolle pros* to get around the 180, and the answer i[s] clearly no, because there was over three months to reschedule the trial date.

In an oral ruling granting the motion to dismiss, Judge Mason opined:

For the record[,] counsel and [appellant] are still present.

I've had a chance to consider the arguments. I've had a chance to read the two cases that are most on point, the *Brown*, as urged by the State, to control the facts of this case; and *Ross* as urged by defense to control the disposition of this matter.

Frankly, neither one of them, really, in my view, is directly applicable to the facts of this case.

In *Brown*, [defense counsel] quite rightly points out there was no request for a continuance that had been ruled upon by the administrative judge, so couldn't be viewed, therefore, as an attempt to circumvent the 180–day limitation.

As [the prosecutor] points out, in *Ross*, the administrative judge had made what they seem to credit as a finding to the case. It couldn't be set back in within 180 days, and Judge Weinstein didn't make that finding in this case.

But from reading *Ross* and from reading *Brown*, it's my view that in deciding this case, that we have become too fixated on the 180–day limitation, that that is part of what people refer to as the *Hicks'* [R]ule, but really the *Hicks'* [R]ule has two components to it.

One is, that the case must be tried within 180 days, and the second, which is in the same subsection under the new

Rule 4–271(a), is that the trial date shall not be continued unless for good cause shown as found by via the administrative judge or his [or her] designee.

When you read *Ross* and when you read *Brown*, but I think more so in *Ross*, what they talk about is the whole reason for this rule and necessity to enforce this rule, is that the supervision of the dockets is given to the administrative judge, and he [or she] is the one that is in the best position to be able to decide whether cases can and can't be tried within the 180 days and efficiently handle the management of the docket.

What the cases say is not that the action cannot circumvent the 180 day limitation, they say that the State cannot take of [sic] this action to circumvent the rule, and in this case what really is occurring is the State acted not to circumvent the prohibition that a case be tried within 180 days, because as they say there were a number of days left, and I accept that that wasn't what the State was intending.

But, obviously, it appears to the [c]ourt that, from the view of the State, it was the decision of the administrative judge of the county that the [S]tate had not established a good cause that the [S]tate thought was entirely unreasonable in light of the fact that this was the first trial date, and for reasons stated on the record they could not go forward under the circumstances, and clearly the entry of the nolle pros, that since the State had no right of appeal from the decision of the administrative judge, that it was abundantly clear to the [c]ourt that *the [S]tate was intending to circumvent the decision of the administrative judge* and that this was not good cause for continuing the case, and that is part of the rule.

So, to that extent, it appears to me that the State's intent was to circumvent Rule 4–271(a), which is referred to as the *Hicks'* Rule, which has the 180–day component to it, but also has that second component, which is that the case cannot be continued unless for good cause shown to the administrative judge.

So I don't believe this falls within either *Brown* or *Ross*, but I do believe, when you read *Brown* or *Ross*, the holdings of those cases, is that the time runs from the filing—the first appearance of the second case, unless the actions of the State are shown to have been intended to circumvent the rule, and *I believe that in this case the action of the [S]tate was intended to circumvent that portion of the rule, which leaves to the administrative judge to decide whether a case, once set within 180 days, should be continued for good cause shown.*

So, to that extent, I think the case falls more within *Ross* than within *Brown* and that the time runs from the first appearance in the first case.

That time has now expired; is that correct?

[DEFENSE COUNSEL]: My calculation was November 17.

THE COURT: Is that correct, Mr. [prosecutor]; do you accept that calculation?

[PROSECUTOR]: Yes.

THE COURT: Then for those reasons, I believe, under the holdings of those two cases, that the motion to dismiss must and shall be granted.

The State appeals the granting of the motion to dismiss and raises one question for our review:

Did the trial court err in dismissing the charges against appellee after re-indictment, when the State *nol prossed* the original charges because the State could not proceed to trial due to the unavailability of DNA test results?

We answer the State's question in the negative, thereby affirming the judgment of the lower court.

## LEGAL ANALYSIS

■■ In the sole issue presented to us in this appeal, the State laments:

Because it is clear from the record that the prosecutor's sole purpose in entering a nolle pros on the original charges was

to allow for receipt of the results of DNA testing, which results were crucial to the prosecution of the case, the circuit court erred in granting [appellee's] motion to dismiss the re-indicted charges for failure to comply with the 180–day period of the original charges. It is especially clear that the trial court erred in dismissing Case No. 96339, where at the time of the nolle pros, almost three months remained of the *Hicks* period. It is clear that the State's *nolle pros* did not have the purpose or necessary effect of circumventing the 180–day period.

Disposition of a case by way of a *nolle prosequi* is governed by Maryland Rule 4–247.[2]

Maryland Code (1996 Repl.Vol.), art. 27, § 591, provides for the scheduling of trial dates in a criminal proceeding:

(a) *Setting the date.*—The date for trial of a criminal matter in a circuit court:

(1) Shall be set within 30 days after the earlier of:

(i) The appearance of counsel; or

(ii) The first appearance of the defendant before the circuit court, as provided in the Maryland Rules; and

(2) May not be later than 180 days after the earlier of those events.

(b) *Changing the date.*—On motion of a party or on the court's initiative and for good cause shown, a county administrative judge or a designee of that judge may grant a change of the circuit court trial date.

---

2.  **Rule 4–247. Nolle prosequi.**

(a) *Disposition by nolle prosequi.* The State's Attorney may terminate a prosecution on a charge and dismiss the charge by entering a nolle prosequi on the record in open court. The defendant need not be present in court when the nolle prosequi is entered, but in that event the clerk shall send notice to the defendant, if the defendant's whereabouts are known, and to the defendant's attorney of record.

(b) *Effect of nolle prosequi.* When a nolle prosequi has been entered on a charge, any conditions of pretrial release on that charge are terminated, and any bail bond posted for the defendant on that charge shall be released. The clerk shall take the action necessary to recall or revoke any outstanding warrant or detainer that could lead to the arrest or detention of the defendant because of that charge.

(c) *Court rules.*—The Court of Appeals may adopt additional rules of practice and procedure for the implementation of this section in circuit courts.

Complementing the requirement in § 591 above that the date for trial in a criminal matter not be later than 180 days after the appearance of counsel or the first appearance of the defendant, is the embodiment of the *Hicks'* Rule contained in Maryland Rule 4–271:

(a) *Trial date in Circuit Court.* (1) The date for trial in the circuit court shall be set within 30 days after the earlier of the appearance of counsel or the first appearance of the defendant before the circuit court pursuant to Rule 4–213, and shall be not later than 180 days after the earlier of those events. When a case has been transferred from the District Court because of a demand for jury trial, and an appearance of counsel entered in the District Court was automatically entered in the circuit court pursuant to Rule 4–214(a), the date of the appearance of counsel for purposes of this Rule is the date the case was docketed in the circuit court. On motion of a party, or on the court's initiative, and for good cause shown, the county administrative judge or that judge's designee may grant a change of a circuit court trial date. If a circuit court trial date is changed, any subsequent changes of the trial date may be made only by the county administrative judge or that judge's designee for good cause shown.

In our recent decision in *Ross v. State,* 117 Md.App. 357, 700 A.2d 282 (1997), we analyzed three cases decided by the Court of Appeals that provided the guide posts in an analysis of whether the State has entered a *nolle pros* to circumvent the time period dictated by art. 27, § 591 and Rule 4–271. *Id.* at 365–66, 700 A.2d 282. The first of those cases, *State v. Glenn,* 299 Md. 464, 466–67, 474 A.2d 509 (1984), involved the distribution of obscene matter. After withdrawing the charges, the prosecutor, on the same day, filed corrected charging documents, alleging the same offense, and the trial date was set for a date beyond the 180 day period that began with the arraignment on the original charge. The trial court granted the

defendant's motion to dismiss for violations of Md.Code, art. 27, § 591 and former Maryland Rule 746 and we affirmed. The Court of Appeals, in reversing this Court, opined:

In *Curley v. State,* 299 Md. 449, 459, 474 A.2d 502 (1984), filed today, we have held that ordinarily when a circuit court criminal case is nol prossed and the same charges are thereafter refiled, the 180–day period for trial prescribed by § 591 and Rule 746 begins to run anew with the arraignment or first appearance of defense counsel under the second prosecution. The only exception recognized in *Curley* was where the prosecution's purpose in filing the nol pros, or the necessary effect of the nol pros, was to circumvent the requirements of § 591 and Rule 746. Consequently, unless the cases at bar fall within this exception, there was no violation of § 591 and Rule 746.

In the instant cases[,] the prosecuting attorney's purpose in nol prossing the charges was not to evade § 591 and Rule 746. The record clearly establishes, with no basis for a contrary inference, that the charges were nol prossed because of a legitimate belief that the charging documents were defective and because the defendants' attorney would not agree to amendment of the charging documents.

Unlike the situation in *Curley,* the necessary effect of the nol pros in these cases was not to circumvent § 591 and Rule 746. November 17, 1981, which was the assigned trial date and the date of the nol pros, was only 123 days after the arraignment and first appearance of counsel. If the cases had not been nol prossed, trial could have proceeded on November 17th. If the cases had not been nol prossed, and if for some reason trial had not proceeded when the cases were called on November 17th, there remained fifty-seven days before the expiration of the 180–day deadline. In *Curley,* if the case had not been nol prossed on the 180th day, it necessarily would have been dismissed for a violation of § 591 and Rule 746. This is not the situation in the present cases. The effect of the nol pros in the present

cases was not necessarily to evade the requirements or sanction of § 591 and Rule 746.  .

*Glenn,* 299 Md. at 466–67, 474 A.2d 509.

In addition to our review of *Glenn* and *Curley,* we reviewed the more recent decision of the Court of Appeals in *State v. Brown,* 341 Md. 609, 672 A.2d 602 (1996).   In *Brown,* the appellant had been charged with child abuse, second degree rape, and related charges.   The State *nol prossed* the charges forty-three days before the scheduled trial date because the DNA tests had not been completed.   The same charges were filed approximately three months later against Brown, who moved to dismiss the charges for violation of § 591 and Rule 4–271.   Defense counsel acknowledged, at the hearing on Brown's motion, that there was a need for the results of the DNA testing and that, if the State had requested a postponement instead of entering a *nol pros,* the postponement would probably have been granted.   The circuit court denied the motion and Brown was found guilty of child abuse pursuant to an agreed statement of facts.   Brown argued on appeal that the circuit court erred by denying his motion to dismiss.   The *Brown* Court, as we noted in *Ross,* affirmed the decision of the circuit court and discussed its decisions in *Curley* and *Glenn:*

> We hold, therefore, that when a circuit court criminal case is nol prossed, and the [S]tate later has the same charges refiled, the 180–day period for trial prescribed by § 591 and Rule 746 ordinarily begins to run with the arraignment or first appearance of defense counsel under the second prosecution.

Our *Curley* · opinion also agreed with the exception recognized by the cases in the third category, namely that where the nol pros had the purpose or necessary "effect of circumventing the requirements of § 591 and Rule 746, the 180–day period will commence to run with the arraignment or first appearance of counsel under the first prosecution." *Ibid.*

Applying these principles to the facts of the *Curley* case, we stated (299 Md. at 461, 474 A.2d at 508, emphasis added):

The trial court in the present case recognized that the time period set forth in § 591 and Rule 746 should not begin to run anew with the second prosecution where it was shown that the purpose of the nol pros was to evade the requirements of the statute and rule. The exception recognized by the trial court, however, is too limited. Where the [S]tate's action *necessarily circumvents the statute* and rule prescribing a deadline for trial, this should be sufficient to continue the time period running with the initial prosecution.

After discussing some decisions in other states, our *Curley* opinion explained why the nol pros in that case "clearly circumvented" § 591 and the implementing rule and had the "necessary effect" of attempting to evade the sanction of dismissal for violation of the statute and rule (299 Md. at 462–463, 474 A.2d at 508–509, emphasis added):

In the instant case, the nol pros clearly circumvented the requirements of § 591 and Rule 746. When the nol pros was entered on March 23, 1981, which was the final day for trial, it was too late for compliance with § 591 and Rule 746. At the time a trial date had not even been assigned. The case could not have been tried on March 23rd, as the defendant, his counsel, and witnesses were not present. There was no reason for them to have been present, as March 23rd was not the assigned trial date. As of the close of business on March 23rd, *the case would have had to have been dismissed for violation of* § 591 and Rule 746. In reality, the prosecution had already lost this case under § 591 and Rule 746 when the nol pros was filed. Regardless of the prosecuting attorney's motives, the necessary effect of the nol pros was an attempt to evade the dismissal resulting from the failure to try the case within 180 days.

Consequently, under the holding in *Curley,* a nol pros has the "necessary effect" of an attempt to circumvent the requirements of § 591 and Rule 4–271 when the alternative to the nol pros would be a dismissal of the case for failure to commence trial within 180 days. When compliance with the

requirements of § 591 and Rule 4–271 is, as a practical matter, no longer feasible, then a nol pros and later refiling of the same charges has the "necessary effect" of an attempt to circumvent the requirements of the statute and the rule. Otherwise, under the teaching of the *Curley* case, it does not.

*Brown,* 341 Md. at 616–18, 672 A.2d 602.

The *Brown* Court ultimately concluded that "[t]he *Glenn* decision makes it clear, therefore, that a *nol pros* will have the 'necessary effect' of an attempt to evade the requirements of § 591 and Rule 4–271 *only* when the alternative to the *nol pros* would have been a dismissal with prejudice for noncompliance with § 591 and Rule 4–271." *Id.* at 619, 672 A.2d 602.

The gravamen of the decision to dismiss the indictment against appellee is contained in the court's remark that

it appears to the [c]ourt that, from the view of the State, it was the decision of the administrative judge of the county that the [S]tate had not established a good cause that the [S]tate thought was entirely unreasonable in light of the fact that this was the first trial date, and for reasons stated on the record they could not go forward under the circumstances, and clearly the entry of the *nolle pros,* that since the State had no right of appeal from the decision of the administrative judge, that it was abundantly clear to the [c]ourt that the [S]tate was intending to circumvent the decision of the administrative judge and that this was not good cause for continuing the case, and that is part of the rule.

Based on the foregoing, the court expressed the belief that it was the State's intent to circumvent Rule 4–271(a). In addition to the administrative judge's denial of the request for a continuance, we must also consider the order that Judge Debelius issued on June 30, 2002 in response to appellee's motion to compel discovery. The order commands that the State file written answers to appellee's discovery request within ten days and, further, directs that the State be prohibited from producing any witness, or evidence at trial or

hearing which relates in any way to the nondisclosure for failure to comply. At the time of the August 12, 2002 proceedings, the State had not complied with the requirement that it file the written answers by August 10, 2002, despite the order commanding it to do so.

The State averred that it needed the DNA evidence to effectively present its case. Because of the court's order, the State would have been prohibited from presenting such evidence in any event. By entering a *nol pros* and subsequently reindicting appellee, not only was the State circumventing the administrative judge's denial of the request for additional time, the State was also circumventing the discovery order and the sanction it imposed. The only options available to the State were to proceed without the subject evidence and present ostensibly insufficient evidence to sustain a conviction or allow the case to be dismissed with prejudice by the administrative judge.

■■■■ The trial judge correctly explained that Rule 4–271(a) has two components. The analysis we must undergo is bifurcated and begins with the administrative judge's determination of good cause for a continuance. *State v. Dorsey,* 114 Md.App. 678, 691 A.2d 730, *aff'd* 349 Md. 688, 709 A.2d 1244 (1998); *State v. Green,* 54 Md.App. 260, 458 A.2d 487 (1983). In the instant case, the administrative judge determined that the State did not show good cause and his determination carries a presumption of validity and should not be disturbed absent a clear abuse of discretion. *Green,* 54 Md.App. at 265–68, 458 A.2d 487. Ordinarily, however, the good cause portion of the two-fold analysis is determined in conjunction with the 180–day time limit.

In delineating the role of the administrative judge in finding good cause, *vel non,* the Court of Appeals in *Capers v. State,* 317 Md. 513, 520, 565 A.2d 331 (1989) (quoting *State v. Toney,* 315 Md. 122, 129–30, 553 A.2d 696 (1989)), explained:

The intervention of the administrative judge or that judge's designee is critical because it is the administrative judge who has an overall view of the court's business, who is

responsible "for the administration of the court," who assigns trial judges, who "supervise(s) the assignment of actions for trial," who supervises the court personnel involved in the assignment of cases, and who receives reports from such personnel, and "(c)onsequently, the administrative judge is ordinarily in a much better position than another judge of the trial court, or an appellant court, to make the judgment as to whether good cause for postponement of a criminal case exists."

In the case *sub judice,* despite the fact that there were ninety-seven days remaining before the 180 days expired, counting from the time of the first indictment, review of the record discloses that the State failed to reschedule the case within the remaining time period. The State similarly *nol prossed* charges on November 17, 1981—the day of trial—with fifty-seven days remaining before the expiration of the 180–day deadline, in *State v. Glenn, supra.* However, the *Glenn* Court based its decision on its determination that the prosecuting attorney's purpose was not to evade the proscriptions of § 591 of art. 27 or Rule 746. "The record clearly establishes, with no basis for a contrary inference," the Court held, "that the charges were nol prossed because of a legitimate belief that the charging documents were defective and because the defendant's attorney would not agree to amendment of the charging documents." *Glenn,* 299 Md. at 467, 474 A.2d 509.

Despite the fact that, in *Glenn,* just as in the case at hand, there was substantial time remaining before expiration of the 180–day deadline, the purpose for entering the *nol pros* in the case under consideration was to circumvent the authority and the decision of the administrative judge. Specifically, the judge had decided that the State had not presented good cause for continuing the case and he had imposed sanctions prohibiting the State from introducing any witness or evidence which "relates in any way to the non-disclosure for failure to comply."

Thus, as the Court of Appeals held in *Glenn,* "[T]he only exception [to the rule that the 180–period begins to run anew

when charges are re-filed after nol pros] recognized in *Curley* was where the prosecution's purpose in filing the nol pros, or the necessary effect of the nol pros, was to circumvent the requirements of § 591 and Rule 746." *Glenn,* 299 Md. at 467, 474 A.2d 509.[3] The trial judge concluded:

> *I believe that in this case the action of the [S]tate was intended to circumvent that portion of the rule, which leaves to the administrative judge to decide whether a case, once set within 180 days, should be continued for good cause shown.*

So, to that extent, I think the case falls more within *Ross* than within *Brown* and that the time runs from the first appearance in the first case.

That time has now expired; is that correct?

After appellant's counsel responded, "My calculation was November 17," the prosecutor concurred, whereupon the court ruled:

> Then for those reasons, I believe, under the holdings of those two cases, that the motion to dismiss must and shall be granted.

The court's factual findings, we think, are not clearly erroneous. The "necessary effect of the nol pros" was to circumvent not only the requirements of § 591 and Rule 4–271, but also the sanction that "the State be prohibited from introducing any witness or evidence at trial or hearing which relates in any way to the nondisclosure for failure to comply" with the motion to compel discovery.

The 180–day period under *Hicks* began at the time of the filing of the initial indictment and the trial judge therefore did

---

**3.** The State is not precluded from prosecuting appellant after reindicting him, in the case at hand, simply because it attempted to circumvent the ruling of the trial judge that good cause did not exist to grant a continuance. Had the State exercised due diligence to reschedule the trial date within the ninety-seven days remaining in the original 180–day period or had appellant prevented the case from going to trial before the expiration of that deadline, the "necessary effect of the nol pros" would not have been to circumvent the requirements of § 591 and Maryland Rule 4–271.

not err when he dismissed the case on November 27, 2002–day 194. For the foregoing reasons, we uphold the judgment of the trial court.

**JUDGMENT OF THE CIRCUIT COURT FOR MONT-GOMERY COUNTY AFFIRMED.**

**COSTS TO BE PAID BY MONTGOMERY COUNTY.**