885 A.2d 351

**Wayne David WHEELER**

**v.**

**STATE of Maryland.**

**No. 331, Sept. Term, 2004.**

Court of Special Appeals of Maryland.

Oct. 28, 2005.

Allison E. Pierce (Nancy S. Forster, Public Defender, on brief), for appellant.

Shannon E. Avery (J. Joseph Curran, Jr., Atty. Gen., on brief), for appellee.

Panel SALMON, KENNEY, and EYLER, DEBORAH S., JJ.

SALMON, J.

Wayne David Wheeler was convicted by a jury sitting in the Circuit Court for Prince George's County of first-degree murder, second-degree murder, and use of a handgun in commission of a crime of violence. He was sentenced to life imprisonment for the first-degree murder conviction and a consecutive twenty-year term for the handgun offense. The second-degree murder conviction was merged for purposes of sentencing. Wheeler noted a timely appeal and presents two questions:

I. Did the circuit court err in denying his motion to dismiss, which was based on an [alleged] violation of the *Hicks* rule?

II. Was the evidence sufficient to sustain appellant's convictions?

We answer appellant's first question in the affirmative and reverse the judgment of the circuit court. Therefore, we need not reach Question II.

## I. *BACKGROUND*

During the early morning hours of August 2, 2002, an off-duty Prince George's County police officer patrolling in the area of the Forest Creek apartments in Prince George's County heard gunshots, then observed a minivan traveling away from the Forest Creek apartment complex at a high rate of speed. The officer pursued the van, which then crashed. Three men ran from the minivan. They were chased on foot by the police, but they evaded immediate capture. Police investigation proved that the minivan had been stolen.

Approximately four hours later, the Prince George's County Police Department received a report of a strange man leaving a backyard in a residential neighborhood not far from the scene of the shooting. Police officers responded to the area and saw and stopped appellant, who had a swollen lip. A

police officer who had taken part in the earlier foot pursuit identified appellant as one of the men who had run from the minivan.

Meanwhile, one victim died as a result of the shooting at the Forest Creek Apartments complex; a second victim was shot in the leg and survived; a third person was fired upon but escaped injury. Testing of a shotgun found in the minivan that crashed proved to be the murder weapon. A 9 mm handgun was recovered by the police a short distance from the location where the minivan crashed. That handgun was also proven to have been used in the shootings at the Forest Creek apartment complex.

The State's theory of the case was that appellant was the getaway driver of the minivan that crashed but was not one of the shooters.

On September 5, 2002, the State filed an indictment against appellant. Defense counsel entered his appearance for appellant on September 23, 2002. Consequently, the 180–day period for commencing trial set forth in Section 6–103 of the Criminal Procedure Article of the Annotated Code (2001) and Maryland Rule 4–271 expired on March 22, 2003.

On December 30, 2002, the State filed its discovery without request and advised defense counsel that it intended to present deoxyribonucleic acid ("DNA") evidence against appellant at trial. The State hoped to prove that appellant drove the minivan by analyzing DNA from the vehicle, as well as various items recovered in the vehicle, including: the driver's side air bag, the passenger's side air bag, a spot of blood on the steering column, a neoprene mask, a cigarette, a bandana, and a T-shirt. On January 17, 2003, more than five months after the shootings, the State filed a motion in which it sought to obtain a DNA sample from appellant for comparison. The motion was promptly granted by the circuit court.

A DNA sample was taken from appellant in early February 2003. The DNA analysis of some, but not all, of the items in the minivan was first attempted by the Prince George's County Crime Laboratory on February 14, 2003. The items not

initially tested were the cigarette, the bandana, and the T-shirt. DNA profiles were obtained from the passenger side air bag, the blood on the steering column, and the neoprene mask, but none of the DNA found on those items matched appellant's.

On February 27, 2003, the prosecutor contacted defense counsel and informed him that she had received the results of the DNA analysis, but due to the fact that none of the DNA profiles matched appellant's, she intended to request a continuance on February 28. Due to inclement weather, the courthouse was closed on Friday, February 28, 2003. On Monday, March 3, 2003, the date set for trial, appellant appeared before the Honorable Ronald D. Schiff, who was assigned to try the case. The prosecutor requested a continuance for several reasons, one of which was to allow time for the remaining items recovered from the minivan to be subjected to a DNA test.

After the prosecutor recounted her efforts to reach a plea agreement, the trial judge inquired: "The only reason you postponed the DNA testing was the hopes you would get a plea out of the case?" The prosecutor responded:

No. We thought we were going to get a plea. When no plea was forthcoming, then I said we'll have to do DNA testing. [Defense counsel] said that's fine. He led me to believe that if it came back positive would be the impetus for him to force his client to make a plea.

The prosecutor also told Judge Schiff that, at her direction, the laboratory did not test all the items recovered from the minivan. The prosecutor explained:

We have limited resources, and we attempt to make judgments on what we think will be [the] more valuable items to be tested. So clearly the driver's side air bag, the passenger side air bag, and the blood on the steering column were the most likely sources in which we would be able to contain [sic] DNA.

The prosecutor then offered this assessment of the State's case in light of the negative DNA analysis:

> Now I find myself in the position that the report is not back yet. [The lab] gave me the test results. These will be the results, but there's no report yet. . . . I have now DNA from three different people, none of which [sic] are the defendant. There are a number of things I need to do at this point. It significantly hurts my case that I've got police officers who say they saw three different people get out of the minivan. . . .
>
> \* \* \*
>
> Because the State wants—the State doesn't want to spend all of it's [sic] resources and prosecute the defendant when there are two other people that are responsible for a murder. The defendant, we believe, is the driver of the vehicle. What we wanted all along was his cooperation in our prosecution. I found out now he's not the driver. At least from the DNA profile. So he's not. Because we didn't get DNA off the driver side air bag, he could still be the driver, he just didn't leave any on the air bag.
>
> \* \* \*
>
> I let [defense counsel] know I will be asking for a postponement of this trial under the circumstances, and the circumstances are that from the very beginning we have been attempting to work out a plea. No plea has been forthcoming. I felt that the DNA would sort of be the impetus that will sort of encourage the defendant to realize it's to his advantage to cooperate with the State. But I'm not at that juncture today.

The State then requested a continuance to test not only the remaining evidence recovered from the minivan, but also to obtain a DNA sample from the owner of the van. The prosecutor also proffered that appellant's cell mate had told the police the nicknames of the two individuals who did the shooting. One of the named individuals was incarcerated and the prosecutor wanted to obtain a DNA sample from that individual.

Judge Schiff inquired: "What's the *Hicks* date?"[1] The prosecutor replied (accurately) that nineteen days remained in the 180–day period. The prosecutor informed the court that it would take "[l]ess than a month" to test the bandana, the cigarette, and the T-shirt, but conceded that the new trial date would have to be beyond the 180–day limit because of her trial schedule.

In response, defense counsel noted that appellant had been incarcerated since the date of the offense, August 2, 2002, that the plea negotiations were no reason for the State to have delayed the DNA testing, that the defense was prepared for trial, and that counsel's schedule would not permit the setting of a new trial date before the middle or end of April.

Judge Schiff denied the State's request for a continuance and expressly found that the prosecutor's reasons for the continuance did not amount to good cause to go past the *Hicks* date.

The prosecutor then told Judge Schiff that she "would need time this morning to decide what steps the State will take next." Court was then recessed. An hour-and-a-half later, court reconvened, and the prosecutor stated:

> Your Honor, in light of the court's decision denying the State's request for continuance and in light of the fact there's been an ongoing investigation, the ... case will be *nol prossed.*

On April 22, 2003, the DNA testing was completed on the remaining items recovered from the minivan. Appellant's DNA was found on the T-shirt recovered on the driver's side floorboard of the minivan. The State filed a new application for statement of charges, which resulted in appellant's arrest on June 26, 2003, and his indictment two weeks later.

---

1. The *"Hicks* date" was a shorthand reference to *State v. Hicks,* 285 Md. 310, 403 A.2d 356 (1979), which analyzed the requirement that criminal cases be brought to trial within 180 days after the earlier of the appearance of counsel or the first appearance of the defendant in circuit court. *State v. Parker,* 338 Md. 203, 205, 657 A.2d 1158 (1995); *State v. Dorsey,* 114 Md.App. 678, 682, 691 A.2d 730 (1997).

Shortly after appellant was arrested for the second time, the prosecutor contacted the attorney from the public defender's office who had previously represented appellant and determined that he was available for trial on July 28, 2003. Because the prosecutor believed that there still remained nineteen days in the original 180-day *Hicks* period, she tried to schedule the next trial date within nineteen days of appellant's July 10, 2003, indictment. In other words, the prosecutor believed that the State could carry the nineteen days forward and apply them to the second prosecution.

The State filed an "EMERGENCY MOTION TO ADVANCE TRIAL DATE," which asked for a July 28, 2003, trial date. The request was granted, but one week prior to trial, a member of the Public Defender's Office telephoned the prosecutor and informed her that no one from the Office would be entering his or her appearance in the case before the trial date. Appellant appeared in court without counsel on July 28, 2003, and the case was postponed.

Appellant then filed a motion to dismiss the indictment, alleging that, by entering a *nol pros* of the first indictment, the prosecutor had intentionally tried to circumvent the requirements of Section 6–103 of the Criminal Procedure Article and Rule 4–271. On November 20, 2003, a hearing was held on the motion. The prosecutor who had entered the *nol pros* testified that on February 5, 2003, slightly less than a month prior to the March 3 trial date, she spoke with Meredith Monroe, who ran the Prince George's County Police Department's DNA Laboratory, to find out who had been assigned to the subject case. The prosecutor informed Monroe that she "had a trial date coming up ... and ... needed this matter to be analyzed on an expedited basis because they had not yet started to do anything."

On February 14, 2003, the prosecutor spoke with Julie Kempton, the person who would ultimately perform the DNA analysis, and informed Kempton that "time was really running short." Kempton told the prosecutor that she had not yet begun the DNA analysis and that it would not be completed in

time for trial.[2] The prosecutor and Kempton then discussed appellant's alleged role as the driver of the minivan and, in light of Kempton's belief that she would not be able to analyze all the items in time for trial, they "decided the only thing we could do then would be to pick which of the items she should focus her attention on." The prosecutor then told Kempton what she thought the most valuable (or promising) pieces of evidence would be.

The prosecutor also testified as to the plea negotiations. Initially, she was approached by Ron Cooper, Esquire, who told her he thought he would be representing appellant. Cooper inquired if the State was "amenable to having the defendant's cooperation." The prosecutor answered in the affirmative. In her words, "we were very eager to have the defendant cooperate and tell us who the other two people in the car were, because, as I said previously, it was my suspicion that the defendant was the driver of the vehicle." Cooper and the prosecutor had "significant discussions" regarding the necessary information for a plea agreement for Wheeler. Later, Cooper told the prosecutor that he had not been retained as expected.

Robert McGowan, of the Public Defender's Office, entered his appearance in the case as appellant's attorney on September 23, 2002. On October 29, 2002, the prosecutor went to McGowan's office to discuss a possible plea. A "plea letter" dated October 30, from the prosecutor to McGowan, followed. In the prosecutor's words, "then nothing happened [in] November." In December, the prosecutor reviewed her notes and "just never got a sense that we were working towards resolving it by way of a plea." The prosecutor added: "By December 30 there was no question in my mind that I was getting worried that this case was not going to be resolved by way of a plea, which is what I had anticipated." All the items necessary to perform a DNA analysis, save for the oral swab DNA sample later taken from appellant, had been in the

---

2. The prosecutor explained that, in the spring of 2003, the laboratory was short-staffed. In addition, Kempton worked only part time.

State's possession since August 2, 2002, but according to the prosecutor,

> they were not tested because I believed that we were going to resolve this case by way of a plea in which [the defendant] would cooperate with the State and would let us know who the other two people were in the minivan, who I believe were the shooters.

When asked if it would have been possible on March 3, 2003, for Kempton to process the remaining items prior to March 22, 2003, the last day in the 180–day period, the prosecutor responded:

> I don't believe so. My recollection is that ... I talked to [Kempton] after Judge Schiff denied my request for a continuance, I talked to her to see what if anything we could do, knowing we still had 19 days before Hicks expired, would we be able to get the other things analyzed and done in time. My recollection was that we would not be able to do so, and that's what she told me, and I understood the difficulty that the DNA lab was having at that time.

The prosecutor testified that, when she *nol prossed* the charges against appellant, it was not her intent to circumvent the 180–day requirement. She stated: "My intention was to stop the trial proceedings against the defendant so we could finish up the DNA analysis that was currently being undertaken." The prosecutor added:

> I believed there were 19 days left before Hicks would expire and I knew I would not be able to have the DNA analysis done before March 22.... So my intentions were to stop the trial at that point.

In the prosecutor's words, she believed that "[b]y stopping the prosecution it would necessarily stop the *Hicks* date." Regarding the status of the State's case against appellant on the date the *nol pros* was entered, the prosecutor stated: "We could not have gone forward on March 3."

The motions judge, without comment, denied appellant's motion to dismiss the indictment based on the *Hicks* Rule.

Appellant's trial under the second indictment commenced on January 20, 2004.

## II. *DISCUSSION*

■ Appellant claims that the *nol pros* entered by the prosecutor had the purpose or necessary effect of circumventing the requirement that he be brought to trial within 180 days. He also contends that the facts in his case are virtually identical to those in *Ross v. State,* 117 Md.App. 357, 700 A.2d 282 (1997), and that the same result is required, i.e., that the charges against him be dismissed.

The State contends that the *nol pros* was not entered with the purpose of circumventing the 180–day rule because the prosecutor held a "good faith" belief that, by stopping the prosecution, she would stop the 180–day period from running. The State also asserts that the "necessary effect" of the *nol pros* was not to circumvent the 180–day requirement because, in the absence of the *nol pros,* dismissal of the case was not a certainty. In support of the claim that the dismissal "was not a certainty," the State says: "Theoretically, the State could have tried Wheeler's case with the evidence it had, including the police officer's identification of appellant." Nonetheless, the State concedes that the DNA analysis was "crucial" because the evidence of appellant's role in the murder. was circumstantial and the DNA evidence would have confirmed appellant's presence in the minivan.

The State's "theoretical" argument that on March 3, 2003, it could have successfully prosecuted appellant without the DNA evidence is not supported by the record. As the prosecutor conceded at the motions hearing, "[w]e could not have gone forward [with trial against appellant] on March 3"—the original trial date.[3]

---

3. As of the original trial date, the State apparently only had proof that appellant was in the minivan and had fled from it after it crashed. The State at that time had no direct or circumstantial evidence that appellant was the getaway driver, nor did it have proof that he shot anyone.

The scheduling of trial dates in criminal proceedings is governed by Section 6–103 of the Criminal Procedure Article.[4] Section 6–103 reads:

(a) *Requirements for setting date.*—(1) The date for trial of a criminal matter in the circuit court shall be set within 30 days after the earlier of:

(i) the appearance of counsel; or

(ii) the first appearance of the defendant before the circuit court, as provided in the Maryland Rules.

(2) The trial date may not be later than 180 days after the earlier of those events.

(b) *Change of date.*—(1) For good cause shown, the county administrative judge or a designee of the judge may grant a change of the trial date in a circuit court:

(i) on motion of a party; or

(ii) on the initiative of the circuit court.

(2) If a circuit court trial date is changed under paragraph (1) of this subsection, any subsequent changes of the trial date may only be made by the county administrative judge or that judge's designee for good cause shown.

(c) *Court rules.*—The Court of Appeals may adopt additional rules to carry out this section.

Complimenting Section 6–103 is Maryland Rule 4–271,[5] which states, in relevant part:

(a) **Trial Date in Circuit Court.** (1) The date for trial in the circuit court shall be set within 30 days after the earlier of the appearance of counsel or the first appearance of the defendant before the circuit court pursuant to Rule 4–213, and shall be not later than 180 days after the earlier of those events. When a case has been transferred from the District Court because of a demand for jury trial, and an

---

**4.** This section, which became effective October 1, 2001, was derived without substantive change from Section 591 of Article 27, Section 591 of the Maryland Annotated Code (2003 Repl.Vol.). Thus, older cases refer to the 180–day rule under Section 591.

**5.** The predecessor of Rule 4–271 was Rule 746.

appearance of counsel entered in the District Court was automatically entered in the circuit court pursuant to Rule 4–214(a), the date of the appearance of counsel for purposes of this Rule is the date the case was docketed in the circuit court. On motion of a party, or on the court's initiative, and for good cause shown, the county administrative judge or that judge's designee may grant a change of a circuit court trial date. If a circuit court trial date is changed, any subsequent changes of the trial date may be made only by the county administrative judge or that judge's designee for good cause shown.

Section 6–103 and Rule 4–271 require that "[t]he trial date for a criminal case in the circuit court may not be later than 180 days after the earlier of the appearance of counsel or ... the first appearance of the defendant in circuit court." *State v. Akopian,* 155 Md.App. 123, 138, 841 A.2d 893 (2004) (citations omitted). This 180–day rule "is mandatory and dismissal of the criminal charges is the appropriate sanction for violation of that time period...." *Ross v. State,* 117 Md.App. 357, 364, 700 A.2d 282 (1997) (citations omitted); *see also State v. Hicks,* 285 Md. 310, 318, 403 A.2d 356 (1979) (same).

The first time the Court of Appeals considered whether the State had improperly entered a *nol pros* in an effort to avoid the 180–day rule was in *Curley v. State,* 299 Md. 449, 474 A.2d 502 (1984). In that case, the first trial date was set well within the 180–day period. Thereafter, defense counsel's request for a postponement was granted, but a new trial date was never set. On the final day of the 180–day time period, the State *nol prossed* the charges. Approximately three months later, the State filed a second criminal information charging Curley with the same offenses he had been charged with under the prior information. The trial court denied Curley's motion to dismiss for violation of the *Hicks* rule.

The Court of Appeals held

that when a circuit court criminal case is nol prossed, and the state later has the same charges refiled, the 180–day period for trial prescribed by § 591 and Rule 746 ordinarily

begins to run with the arraignment or first appearance of defense counsel under the second prosecution. *If, however, it is shown that the nol pros had the purpose or the effect of circumventing the requirements of § 591 and Rule 746, the 180-day period will commence to run with the arraignment or first appearance of counsel under the first prosecution.*

*Curley,* 299 Md. at 462, 474 A.2d 502 (emphasis added).

In applying that rule to the case before it, the *Curley* Court noted that the *nol pros* was entered on the final day for trial; therefore, it was too late to comply with the statute and rule. *Id.* In addition, the defendant, his counsel, and witnesses were not present, and there was no reason for them to have been present as a new trial date had not been set. The *Curley* Court said:

In reality, the prosecution had already lost this case under § 591 and Rule 746 when the nol pros was filed. Regardless of the prosecuting attorney's motives, *the necessary effect of the nol pros was an attempt to evade the dismissal resulting from the failure to try the case within 180 days.*

*Curley,* 299 Md. at 462–63, 474 A.2d 502 (emphasis added).

On the same day that *Curley* was decided, the Court filed its opinion in *State v. Glenn,* 299 Md. 464, 474 A.2d 509 (1984). In *Glenn,* the prosecutor concluded that there was a defect in the charging documents. He contacted defense counsel, who said that he would object to any amendment to the charging documents. On the date set for trial, the prosecutor *nol prossed* the charges. On the same day, new corrected charging documents were filed, alleging the same offenses. Glenn filed a motion to dismiss the second charging document for violation of the 180–day rule, which the circuit court granted. This Court affirmed that judgment.

In *Glenn,* the Court of Appeals reversed our decision, holding that the prosecuting attorney's purpose in *nol prosing* the charges was not to evade the 180–day rule. *Glenn,* 299 Md. at 467, 474 A.2d 509. Rather, "the charges were nol prossed because of a legitimate belief that the charging documents were defective and because the defendants' attorney

would not agree to amendment of the charging documents." *Id.* The Court noted that, unlike *Curley*, where the *nol pros* was entered on the final day of the 180–day period, 57 days remained in that time period. *Id.* As a result, "[t]he effect of the nol pros ... was not necessarily to evade the requirements or sanction of § 591 and Rule 746." *Id.*

The Court of Appeals also declined to find a violation of the *Hicks* rule in *State v. Brown*, 341 Md. 609, 672 A.2d 602 (1996). In that case, the trial date was twice postponed. On the third trial date, which was 43 days before the expiration of the 180–day period, the prosecutor *nol prossed* the charges of second-degree rape, child abuse, and related offenses. In *nol prossing* the entire case, the prosecutor explained that the results of the DNA testing had not yet been received and that the results were necessary to comply with the defendant's discovery motion and for the State's trial preparation.

Three months later, the DNA testing was completed, and the defendant was again indicted on the same charges. The trial court denied Brown's motion to dismiss. This Court reversed, concluding that the *nol pros* had the effect of circumventing the 180–day rule. The Court of Appeals reversed this Court and held "that a nol pros will have the 'necessary effect' of an attempt to evade the requirements of § 591 and Rule 4–271 *only* when the alternative to the nol pros would have been dismissal with prejudice for noncompliance with § 591 and Rule 4–271." *Brown*, 341 Md. at 619, 672 A.2d 602 (emphasis in original and citations omitted). The *Brown* Court stressed that forty-three days remained in the 180–day period when the case was *nol prossed*, and "the State's Attorney's office may have been able to expedite the DNA testing and obtain the results so that trial of the case could have begun before the deadline." *Id.* at 620, 672 A.2d 602. In the alternative, the State could have obtained a good cause postponement from the administrative judge. *Id.* The Court commented that "[t]here was clearly a basis for such postponement." *Id.* As a result, the *nol pros* did not have the necessary effect of an attempt to circumvent the 180–day rule. *Id.* at 621, 672 A.2d 602.

This Court has also considered the *Hicks* rule issue in several cases. In *Ross, supra,* the defendant was charged with possession of cocaine with intent to distribute and possession of cocaine. 117 Md.App. at 360, 700 A.2d 282. On the date set for trial, the parties appeared before the county administrative judge, and the State requested a continuance. The State explained that the laboratory had failed to perform an analysis of the drugs, and therefore no chemist's report had been filed. Defense counsel opposed the request, noting that the State had been in possession of the drugs for five months prior to trial. The administrative judge agreed with defense counsel, adding: "I don't think this case can be put back in. Our docket is too crowded. It cannot be put back in before *Hicks* runs, and I am not finding good cause.. . ." *Id.* at 361. The judge denied the State's request and the prosecutor responded: "With that ruling, the State will enter the matter as *nolle prosequi." Id.*

In *Ross,* nine days after the *nol pros,* a new indictment was filed. Prior to trial, Ross moved to dismiss the charges, arguing that the State had circumvented the 180-day rule by *nol prossing* the charges when its request for a continuance was denied. Ross's motion was denied.

On appeal, this Court held that the State had entered the *nol pros* to circumvent the 180-day limit. *Ross,* 117 Md.App. at 370, 700 A.2d 282. We said, *id.* at 369–70, 700 A.2d 282:

In the present case, there was a ruling by the administrative judge that the State's request for a postponement was not supported by good cause. The judge commented that the case could not "be put back in. Our docket is too crowded. It can not be put back in before Hicks runs, and I am not finding good cause. . . ." . . . Thus, the administrative judge expressly found that there was no good cause for a postponement and that the case could not be set in before the 180–day time period expired. As § 591 and Rule 4–271 were enacted to bring the postponement power under the administrative judge, who, by virtue of his position overseeing the docket, possesses the requisite knowledge of that docket, we decline to view the administrative judge's com-

ments as only a "prediction." Indeed, the administrative judge recognized that his ruling would inure to appellant's benefit.

The State stresses that there were eighty-eight days left to run in the 180–day time period and refers us to *Brown,* 341 Md. 609, 672 A.2d 602, [(1996)]. In *Brown,* however, there was no ruling from the administrative judge. Moreover, both parties had agreed that, if requested, a postponement for good cause would have been granted, and that there was a possibility that the case could have been brought to trial within the remaining forty-three days of the 180–day time period. We also note that there was no decision from the administrative judge in *Curley* and *Glenn.* In the present case, however, a postponement was requested and denied and, as found by the administrative judge, the case could not be set in before the tolling of the 180–day limit. We again stress that in light of the administrative judge's supervision of the docket, we are unable to ignore his statement that the case could not be heard before expiration of the 180–day time period. In addition, immediately following the judge's ruling, the State entered a nol pros in the case. We can discern no clearer attempt to circumvent the time period dictated by Art. 27, § 591 and Rule 4–271.

In *Baker v. State,* 130 Md.App. 281, 745 A.2d 1142 (2000), the defendant was charged with child abuse, reckless endangerment, and various drug-related offenses. On the date set for trial, which was nineteen days before the expiration of the 180–day period, the State *nol prossed* all counts. Six days later, Baker was indicted on the single charge of child abuse.

Baker's trial was not held within the initial 180–day period, which caused him to file a motion to dismiss for violation of Rule 4–271 and Section 591. The motion was denied.

On appeal, we first concluded that the *nol pros* did not have the purpose of circumventing the 180–day requirement because, in denying Baker's motion to dismiss, the trial court implicitly accepted the prosecutor's testimony that this was

not his purpose. We were thus left to consider whether the *nol pros* had the "necessary effect" of circumventing the rule. *Baker*, 130 Md.App. at 289, 745 A.2d 1142.

Regarding the necessary effect, we drew "a critical distinction between 1) a *nol pros* that merely has the **actual effect** of carrying a trial beyond the 180–day limit and 2) a *nol pros* that has the **necessary effect** of carrying a trial beyond the 180–day limit." *Baker*, 130 Md.App. at 290, 745 A.2d 1142. "Only the latter will foreclose the trial from going forward." *Id.*

In *Baker*, a postponement or a *nol pros* were legitimate options for the State. *Id.* at 301–02, 745 A.2d 1142. Unlike the situation in *Ross*, no judge had denied a postponement request. *Id.* at 301, 745 A.2d 1142. Further, the indications were that the State had good cause for requesting a postponement and that the trial judge would have looked favorably on such a request.[6] *Id.* Additionally, in contrast to *Ross*, there was no statement by the administrative judge or anyone else that the dockets were so crowded that the case could not be reset within the original 180–day period. *Id.* Finally, there were nineteen days left in the 180–day period and the State could have proceeded to trial on the date that it requested the postponement or any of the ensuing nineteen days. *Id.* at 302, 745 A.2d 1142. Ultimately, we held that the entry of the *nol pros* did not have the necessary effect of circumventing the 180–day rule. *Id.* at 303, 745 A.2d 1142.

The unavailability of DNA evidence led the prosecutor to enter a *nol pros* in *State v. Price*, 152 Md.App. 640, 833 A.2d 614 (2003). In that case, Price was charged with armed robbery. Shortly after the crime, blood was found on the defendant's right hand. *Id.* at 642, 833 A.2d 614. On the

---

**6.** The State had *nol prossed* the charges because it had concluded that it was not in the best interests of the child victim to testify. *Baker*, 130 Md.App. at 296–97, 745 A.2d 1142. As a result, there was not enough time remaining before trial to give the defense the required twenty-day notice of its intent to have a social worker testify to the hearsay statements made to her by the victim. *Id.*

second scheduled trial date, the state requested a continuance because of the unavailability of DNA test results. Although the evidence had been in the State's possession for three months, the test had not yet been completed. In explaining the delay, the prosecutor said that he had been unaware that the laboratory would not start its DNA analysis until the lab received a subpoena setting forth the trial date. *Id.* at 642, 833 A.2d 614. The administrative judge denied the prosecutor's request, adding that there was a judge available to try the case that day. The prosecutor then informed the court: "The State will enter a *nolle pros* to the charge at this time and we'll get a new charging document today to charge."

Five weeks later, Price was re-indicted on the same charges. Prior to trial, he moved to dismiss the charges against him, alleging that the State entered the *nol pros* in order to circumvent the 180–day requirement. The circuit court granted Price's motion to dismiss. *Id.* at 644, 833 A.2d 614.

In affirming the circuit court's dismissal of the charges, we noted that, although the State averred that it needed the DNA evidence to effectively present its case, it had also failed to comply with a discovery order, which would have prevented the State from presenting that evidence. *Price,* 152 Md.App. at 653, 833 A.2d 614. Judge Arrie Davis, for the Court, wrote:

> By entering a *nol pros* and subsequently reindicting [Price], not only was the State circumventing the administrative judge's denial of the request for additional time, the State was also circumventing the discovery order and the sanction it imposed. The only options available to the State were to proceed without the subject evidence and present ostensibly insufficient evidence to sustain a conviction or allow the case to be dismissed with prejudice by the administrative judge.

*Id.*

Although 97 days remained in the 180–day period when the case was *nol prossed,* "the purpose for entering the *nol pros* in the case ... was to circumvent the authority and the decision of the administrative judge." *Id.* at 654, 833 A.2d 614.

In affirming our decision in *Price*, the Court of Appeals said:

> [T]he State sought and was refused a continuance, the administrative judge expressly finding no good cause for one. The effect of that ruling was to mandate that trial proceed, as scheduled. *The consequence of the State not going forward or not producing evidence was dismissal of the case or an acquittal.* When the State nolle prossed the case, it was, as the State concedes, to avoid those results. Thus, the State is correct, the nolle pros did not have the "necessary effect" of circumventing the 180 day requirement of the statute and the rule; rather, it was for the purpose of circumventing, and, indeed, that intention was achieved, the requirement of the statute and the rule that trials proceed except when there has been a finding of good cause by the administrative judge.

*State v. Price*, 385 Md. 261, 278–79, 868 A.2d 252 (2005) (footnote omitted) (emphasis added).

In *State v. Akopian*, 155 Md.App. 123, 841 A.2d 893 (2004), the State requested a continuance because one of its witnesses, a police officer,[7] was not available on the scheduled trial date. When the administrative judge denied the State's request, the prosecutor said that the witness would be available the next day. The judge commented that jury selection could be completed that day with testimony beginning the following day. In other words, the judge, in effect, informed the prosecutor that a continuance was unnecessary.

The defendant then indicated that he had no pre-trial motions, that he waived his right to a jury trial, and that he elected to have a bench trial. The State informed the trial court that it was not ready to proceed. The prosecutor then stated: "I will nolle-pros all counts at this time. I will be re-indicting this case on Thursday."

---

7. The officer was a member of a K-9 unit and involved in investigating the sniper attacks.

The defendant was re-indicted within two days, and thereafter, the State consistently sought to have the case set for trial within 180 days from commencement of the running of the initial 180–day period. Although the defendant repeatedly appeared without counsel and the administrative judge was reluctant to set a trial date with the defendant unrepresented, the State eventually had the trial date set within the original 180–day period. Due to inclement weather, however, the case did not go forward on the scheduled trial date. Subsequently, the trial court granted the defendant's motion to dismiss.

This Court reversed the trial court's dismissal, commenting that "the State was vigorous in its effort to advance the trial date to fit within the original 180 day calendar." *Akopian,* 155 Md.App. at 141, 841 A.2d 893. We held that "entry of the *nolle prosequi* ... had neither the necessary nor intended effect of circumventing the 180–day rule." *Id.* at 143, 841 A.2d 893. We explained:

It is abundantly clear from the record that the State made extraordinary effort to obtain a trial date well within the outside limit of the original 180–day calendar. In every instance the State's effort was thwarted by appellee's appearance without counsel and, what we conclude to be, his refusal to be represented. It is true that the savvy defendant can manipulate the system to obtain delays, and the facts before us lead to the inescapable conclusion that appellee's goal was to delay trial to the point of a *Hicks* violation, despite the State's best efforts to avoid that result. The State should not suffer the detriment of his manipulation.

*Akopian,* 155 Md.App. at 143, 841 A.2d 893 (footnote omitted).

The most recent case addressing the question here presented is *Alther v. State,* 157 Md.App. 316, 850 A.2d 1211, *cert. denied,* 383 Md. 213, 857 A.2d 1130 (2004). *Alther* was charged with first-degree rape and nine related offenses. The State subsequently filed a new charging document in circuit court, eliminating the first-degree rape charge and reducing the total number of charges to six. In the circuit court, the

State twice requested postponements, which were granted over the defendant's objections. The third trial date was set four days prior to the expiration of the 180–day period.

Approximately one week prior to trial, the State re-charged Alther with first-degree rape. The trial court denied the State's motion to consolidate the charges and indicated that there would be no postponement of trial. Accordingly, the first-degree rape charge would not be included in the case then set for trial.

On the date set for trial, the State *nol prossed* the six charges contained in the circuit court charging document. All that remained was the first-degree rape charge. The next day, in District Court, the State filed a new charging document containing ten charges. The State then filed in circuit court a charging document containing the same ten charges. Shortly thereafter, Alther filed a motion to dismiss for violation of the 180–day rule. The circuit court denied the motion, and appellant was later convicted of numerous charges.

We reversed, saying that "by entering the *nol pros*, the State effectively circumvented the decision of the circuit court denying its motion to consolidate." *Alther*, 157 Md.App. at 334, 850 A.2d 1211. We commented that, in *Price*, this Court "held that when a scheduling decision has been rendered by the circuit court, and the *nol pros* is entered as a means of circumventing that decision, the *nol pros* will have the purpose or necessary effect of evading the 180–day rule." *Alther*, 157 Md.App. at 335, 850 A.2d 1211. In *Alther*, as in the present case, the circuit court had also expressly opined there was no good cause for postponement, and practically speaking, it would have been impossible to try the case within the four-day period after the charges were re-filed. *Id.* We concluded that the *nol pros* was entered "for the purpose of avoiding the court's order denying consolidation and its necessary effect four days before the end of the 180–day period, was to circumvent the 180–day rule." *Id.* 338, 850 A.2d 1211 (citations omitted).

 Turning to the present case, we conclude that the motions judge did not err in finding, impliedly, that the *nol pros* was not entered for the purpose of evading the 180–day requirement. Although the prosecutor indicated that she had entered the *nol pros* in order to toll the running of the 180–day period, she was proceeding under the erroneous belief that she could stop the prosecution, carry the remaining nineteen days forward, and apply those nineteen days to the second prosecution. This belief was mistaken. That the prosecutor was proceeding under this erroneous belief is shown by her testimony and corroborated by the contents of the "EMERGENCY MOTION TO ADVANCE TRIAL DATE" she filed.

Nonetheless, that mistaken belief does not save the entry of the *nol pros* from having the "necessary effect" of circumventing the 180–day rule. As in *Curley,* the State had already lost its battle against the 180–day rule when it entered the *nol pros.* In contrast to *Brown,* the State could not have proceeded to trial against appellant on the date of the *nol pros* or within the ensuing nineteen days. The prosecutor explicitly admitted that she could not proceed to trial when she testified that the State "could not have gone forward on March 3." In addition, it was clear, based on the prosecutor's testimony, that the case could not be set back in the nineteen days before the 180–period expired because it would have taken more than nineteen days to complete the DNA analysis and without DNA evidence would have remained the same as it was on March 3– insufficient to convict. Unlike the prosecutions in *Brown* and *Baker,* the State was left with no good options once the continuance was denied. It could face dismissal for a violation of the 180–day rule or proceed to trial with what the prosecutor believed to be insufficient evidence to convict. Thus, the *nol pros* had the "necessary effect" of "circumventing" the *Hicks* rule.

Appellant's case closely resembles *Ross.* Here, as in *Ross,* the prosecutor requested a continuance on the date of trial and that request was denied. In both cases, the presiding judge found the absence of good cause to continue the case or

to be beyond the *Hicks* date. "I don't think it's sufficient good cause to continue the case." *See Ross, supra,* 117 Md.App. at 370, 700 A.2d 282. The State's request for a continuance, the judge's denial of the request, and the State's immediate entry of the *nol pros* is also very similar to the circumstances found in *Price,* save for the fact that the State's attempt to evade a discovery order was also at issue in that case.

Because the *nol pros* had the necessary effect of avoiding the *Hicks* rule, we vacate the judgments of the circuit court and remand appellant's case to the Circuit Court for Prince George's County with directions to dismiss the charges against appellant.

**JUDGMENTS REVERSED; CASE REMANDED TO THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY FOR DISMISSAL OF THE CHARGES; COSTS TO BE PAID BY PRINCE GEORGE'S COUNTY.**